IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SHARKNINJA OPERATING LLC and SHARKNINJA SALES COMPANY,<br><br>Plaintiffs,<br><br>v.<br><br>DYSON, INC. and DYSON TECHNOLOGY LIMITED,<br><br>Defendants. | Civil Action No. 1:23-cv-11277<br><br>**JURY TRIAL DEMANDED** |

**COMPLAINT FOR DECLARATORY JUDGMENT**

SharkNinja Operating LLC and SharkNinja Sales Company (collectively, "SharkNinja"), through their undersigned attorneys, allege the following for their Complaint for Declaratory Judgment against Dyson, Inc. ("Dyson US") and Dyson Technology Limited ("Dyson UK") (collectively, "Dyson"):

**NATURE OF ACTION**

1. This is an action for declaratory judgment, seeking a declaration of noninfringement with respect to U.S. Patent No. 11,044,979 ("the '979 patent") (Ex. A) under the patent laws of the United States, 35 U.S.C. § 100 et seq., and the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202.  By this action, SharkNinja seeks to resolve an actual, immediate, and substantial controversy with Dyson as to the '979 patent.

**THE PARTIES**

2. Plaintiff SharkNinja Operating LLC is a limited liability company organized and existing under the laws of Delaware, having a principal place of business at 89 A Street, Suite 100, Needham, Massachusetts 02494.  SharkNinja has been based in Massachusetts for almost 20 years,

moving its headquarters from Montreal, Canada to Massachusetts in 2003. Its current headquarters in Needham, Massachusetts, pictured below, house over 750 employees, including research and development, sales, marketing and corporate leadership personnel. SharkNinja's Massachusetts headquarters are home to a vast number of its employees and operations.



3. Plaintiff SharkNinja Sales Company is a Delaware Corporation organized and existing under the laws of Delaware, having a principal place of business at 89 A Street, Suite 100, Needham, Massachusetts 02494.

4. Upon information and belief, Defendant Dyson, Inc. is a corporation organized and existing under the laws of the State of Illinois, having a principal place of business at 600 W. Chicago Avenue, Suite 275, Chicago, IL 60654.

5. Upon information and belief, Defendant Dyson Technology Limited is a limited company organized and existing under the laws of the United Kingdom, having a principal place of business at Tetbury Hill, Malmesbury, Wiltshire, United Kingdom, SN16 0RP.

6. Upon information and belief, Dyson UK is the current assignee of the '979 patent.

7. Dyson sent SharkNinja a letter on May 31, 2023 entitled "Notice of Infringement of U.S. Patent No. 11,044,979" on behalf of both Dyson US and Dyson UK, suggesting that Dyson US also has rights in the '979 patent.  SharkNinja thus names Dyson US in this Complaint out of an abundance of caution to include all potential right-holders in the '979 Patent.

## JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction over SharkNinja's Declaratory Judgment Complaint under 28 U.S.C. §§ 1331, 1338(a), 2201, and 2202.  As explained below, there is a definite, concrete, and substantial controversy between the parties, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

9. This Court has personal jurisdiction over Dyson because Dyson has not only directed communications to SharkNinja in this District threatening legal action against SharkNinja but also has consciously and purposely engaged in actions to avail itself of the jurisdiction of this District, including that it has regularly and systematically transacted business in this District and that it indicated in this District its intention to assert its rights under the '979 patent by pursuing claims of infringement against SharkNinja.  Dyson's purposeful actions include sending a letter dated May 31, 2023 to SharkNinja at its headquarters at Needham, Massachusetts, which is in this District, accusing SharkNinja of infringing the '979 Patent.  Dyson's May 31, 2023 letter did not offer a license and, instead, sought "a prompt but graceful exit of the Shark FlexStyle™ Air Styling and Drying System from the U.S. market," including in particular this District where SharkNinja has substantial sales, substantial offers for sale, and substantial promotional activity relating to the Shark FlexStyle™ Air Styling and Drying System.  For example, SharkNinja designs and tests the

Shark FlexStyle™ Air Styling and Drying System in this District, and its US sales and marketing organizations for the product are also located in this District.

10. In addition, on information and belief, Dyson also maintains a Service Center for its products at 162 Cordaville Road, Suite 160, Southborough, MA 01772 ("Southborough Service Center"), which it markets on its website at https://www.dyson.com/support/service-centers/southborough. On information and belief, the Southborough Service Center is a physical location operated by Dyson, as shown below:



11. The Southborough Service Center also maintains a Facebook page at https://www.facebook.com/DysonServiceCenterMarlborough/. The Southborough Service Center's Facebook page has advertised Dyson hair care products that, according to Dyson's May

---

[1] https://www.facebook.com/DysonServiceCenterMarlborough/photos/386980615067233 (accessed June 2, 2023).

4

31, 2023 letter, use technology disclosed in the '979 patent, including the Dyson Airwrap™ hair styling product since at least 2020, as shown below:

 2
 3

 4

---

[2] https://www.facebook.com/page/378829125882382/search/?q=Airwrap%E2%84%A2 (accessed June 2, 2023).
[3] https://www.facebook.com/page/378829125882382/search/?q=Airwrap%E2%84%A2 (accessed June 2, 2023).
[4] https://www.facebook.com/DysonServiceCenterMarlborough/photos/883288042103152 (accessed June 2, 2023).

5

12. On information and belief, customers can purchase Dyson hair care products that, according to Dyson's May 31, 2023 letter, use technology disclosed in the '979 patent, including the Dyson Airwrap™ hair styling product, at the Southborough Service Center, which also promotes cross-selling opportunities and services to existing customers to promote sales.

13. On information and belief, customers also can purchase Dyson hair care products that, according to Dyson's May 31, 2023 letter, use technology disclosed in the '979 patent, including the Dyson Airwrap™ hair styling product, throughout the District, including at stores such as Best Buy (available at South Bay Center location in Dorchester, MA and stores in Braintree, Mansfield, Dedham, Watertown, Everett, Dorchester, and Saugus), Sephora (available at Sephora Cambridgeside location in Cambridge, MA, Sephora North Street location in Boston, MA, Sephora in Braintree, MA and Sephora in Burlington, MA), Neiman Marcus (available at Copley Place location in Boston, MA), Nordstrom (available at Natick, MA location and Burlington, MA location), and Ulta Beauty (available at South Bay Expansion location in Dorchester, MA Gateway Center location in Everett, MA, and stores in Braintree, Foxborough, Northborough, Hudson, and Bellingham). On information and belief, Dyson has substantial sales, substantial offers for sale, and substantial promotional activity relating to the Dyson Airwrap™ in the District.

14. Dyson also has previously availed itself of the District by bringing litigation in the District, including against SharkNinja's predecessor—Euro-Pro Operating LLC. *See Dyson Inc. v. Euro-Pro Operating LLC*, C.A. No. 1:09-cv-11745-WGY (D. Mass.) (false advertising and unfair business practices).

15. The actions set forth above bear a direct connection to, and form the basis for, SharkNinja's claims against Dyson and have created a real, live, immediate, and justiciable case

or controversy between SharkNinja and Dyson.  Dyson has asserted rights under a patent based on certain identified ongoing or planned activity of SharkNinja, and SharkNinja contends that it has the right to engage in the accused activity without license.  In addition, SharkNinja now reasonably apprehends a patent infringement lawsuit by Dyson.  The details relating to Dyson's actions to create this controversy are described in further detail in the Factual Background section below, which are incorporated by reference here.

16. Dyson has thus established sufficient minimum contacts with the District of Massachusetts such that Dyson is subject to specific personal jurisdiction for this Complaint.  Further, the exercise of personal jurisdiction based on these repeated and highly-pertinent contacts does not offend traditional notions of fairness and substantial justice.

17. Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(b) and 1400, including because, under Federal Circuit law, venue in declaratory judgment actions for noninfringement of patents is determined under the general venue statute, 28 U.S.C. § 1391.

18. Under 28 U.S.C. § 1391(b)(1), venue is proper in any judicial district where a defendant resides.  An entity with the capacity to sue and be sued, such as Dyson, is deemed to reside, if a defendant, in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question under 28 U.S.C. § 1391(c).  As discussed above, Dyson is subject to personal jurisdiction with respect to this action, and thus, for the purposes of this action, venue is proper under 28 U.S.C. § 1391(b)(1).  In addition, venue is proper for Dyson Technology Limited in any District, as a foreign defendant.  28 U.S.C. § 1391(c)(3).

19. For the reasons set forth above, venue is also proper under 28 U.S.C. § 1391(b)(2), given that a substantial part of the events or omissions giving rise to the claim occurred and/or a substantial part of property that is the subject of the action is situated in this District.

## FACTUAL BACKGROUND

20. Plaintiff SharkNinja is a worldwide leader and innovator in the housewares industry. It offers more than 21 categories of products that include hair care products, vacuum cleaners, and kitchen appliances. SharkNinja has a rich history of providing "five star" products to consumers at affordable prices.

21. SharkNinja devotes significant resources to its research and development, which has resulted in, among other things, development of innovative products and product features. Indeed, SharkNinja's efforts have resulted in the development of its innovative Shark® haircare products that are well known for their quality, ease of use, and innovative technology. These include, but are not limited to, the Shark FlexStyle™ products and Shark HyperAir™ Hair Dryer products. SharkNinja's efforts have also resulted in the development of its innovative Shark® cleaning products. These include, but are not limited to, the Shark AI Ultra Robot™ 2-in-1 vacuum, the Shark® Stratos™ upright and cordless vacuum cleaners, Shark® Cordless Pro Vacuum, and Shark® Wandvac® Cordless Self-Empty System. SharkNinja's efforts have also resulted in the development of its Ninja® kitchen appliances that are also well known for their quality, ease of use, and innovative technology. These include, but are not limited to, the Ninja® Foodi® pressure cooker, Ninja® Speedi™ rapid cooker, Ninja® Creami® ice cream maker, Ninja® Foodi® indoor grills, Ninja Woodfire™ outdoor grill, Ninja® Foodi® Power Blender, and Ninja® 12-in-1 smart oven products.

22. SharkNinja's innovative products are sold by retailers as well as through direct marketing to consumers through the use of infomercials and on the Internet.

23. On August 24, 2022 (with a formal launch date of September 6, 2022), SharkNinja accepted orders for a new and innovative hair care product called the Shark FlexStyle™ Air Styling & Drying System, which can rotate back and forth from a powerful hair dryer to a multi-styling tool with just a twist. The FlexStyle™ offers smart hair care features at affordable prices.

24. Dyson sent a letter to SharkNinja's Needham, Massachusetts headquarters dated May 31, 2023 ("May 31, 2023 Letter") and directed to the Chief Legal Officer of SharkNinja. This letter purports to be on behalf of both Dyson UK and Dyson US. In the letter, Dyson wrongly accused SharkNinja of "infringing at least claim 1 of the '979 Patent." Dyson demanded that SharkNinja "immediately cease infringement" and respond to Dyson by June 7, 2023 to "negotiate a prompt but graceful exit of the Shark FlexStyle™ Air Styling & Drying System from the U.S. market." Dyson noted that should SharkNinja fail to exit, "Dyson . . . will pursue all legal remedies available."

25. Dyson has taken similar threatening actions in other jurisdictions with respect to foreign counterparts of the '979 Patent, which resulted in immediate litigation. In Germany, Dyson UK sent a letter to SharkNinja Germany GmbH ("SharkNinja Germany") and SharkNinja Europe Limited ("SharkNinja Europe") on March 8, 2023, accusing the Shark FlexStyle™ Air Styling & Drying System of allegedly infringing EP 3 119 234 B1. Shortly thereafter, on March 14, 2023, Dyson UK sued SharkNinja Europe and SharkNinja Germany on EP 3 119 234 B1.

26. In France, Dyson UK sent a letter to SharkNinja France on March 8, 2023, accusing the Shark FlexStyle™ Air Styling & Drying System of allegedly infringing EP 3 119 234 B1. On the previous day, on March 7, 2023, Dyson UK had also sent a letter to SharkNinja Germany on

accusing the Shark FlexStyle™ Air Styling & Drying System of allegedly infringing EP 3 119 234 B1 in France.  Shortly thereafter, Dyson UK sued SharkNinja France and SharkNinja Europe on EP 3,119,234B1 in France, and a writ of summons was delivered to SharkNinja France on April 4, 2023.

27. In Korea, Dyson sent a letter to Cosmo Corp., a distributor of the Shark FlexStyle™ Air Styling & Drying System, on June 1, 2023, in which Dyson accuses the Shark FlexStyle™ Air Styling & Drying System of infringing KR 102143436 B1 and KR 102179911 B1, and threatens legal action.

28. While these foreign counterparts are different patents under different patent laws, and with different legal scope than the '979 patent, they nonetheless contribute to the substantiality and immediacy of the controversy between SharkNinja and Dyson with respect to the '979 patent.

29. Based on the May 31, 2023 Letter and the activities listed immediately above with respect to foreign counterparts of the '979 patent, there is a substantial controversy between SharkNinja and Dyson as to whether the Shark FlexStyle™ Air Styling & Drying System infringes the '979 Patent.  SharkNinja and Dyson have adverse legal interests with respect to the question of infringement of the '979 patent, especially since there is already ongoing litigation in Germany and France over Dyson's patents that are counterparts to the '979 patent.  Given Dyson's demand that SharkNinja "immediately cease infringement" by discontinuing the Shark FlexStyle™ Air Styling & Drying System, and to respond by June 7, 2023, along with the activities on the foreign counterparts set forth above, the dispute between SharkNinja and Dyson is immediate and real.

## COUNT I
## DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF THE '979 PATENT

30. SharkNinja incorporates the preceding paragraphs as if fully set forth herein.

31. The Shark FlexStyle™ Air Styling & Drying System is a revolutionary product that can act as a fast, powerful hair dryer, and with just a twist transforms into an ultra-versatile multi-function hair styling product, as shown below:



32. The Shark FlexStyle™ Air Styling & Drying System can include several attachments, including the Auto-Wrap Curler accessory, pictured below. The Auto-Wrap Curler wraps, curls, and sets users' hair by using air to wrap slightly damp hair around the barrel and dry it in place. The Shark FlexStyle™ Air Styling & Drying System can include two curlers to allow users to curl their hair in different directions.



Dyson's foreign litigations have accused SharkNinja's Auto-Wrap Curler accessory of infringing foreign counterparts of the '979 patent.

33. SharkNinja has not infringed and does not infringe any claim of the '979 patent, either literally or under the doctrine of equivalents, under 35 U.S.C. § 271, including but not limited to through SharkNinja's making, using, selling, offering for sale, importing, and/or supplying SharkNinja's Shark FlexStyle™ Air Styling & Drying System, including the Auto-Wrap Curler. SharkNinja's Shark FlexStyle™ Air Styling & Drying System does not infringe for multiple reasons, including, but not limited to, those identified below.

34. For example, SharkNinja's Shark FlexStyle™ Air Styling & Drying System does not meet at least the element "wherein the outlet in the cylindrical second portion of the attachment comprises at least one slot extending continuously from the proximal first portion to a distal end of the attachment" as recited in independent claim 1 of the '979 patent.

35. For example, the FlexStyle™ Auto-Wrap Curler accessory has openings that do not extend continuously to a distal end of the attachment, as required by claim 1. The FlexStyle™ product has multiple openings for fluid air to exit the attachment, and those openings extend only a portion of the curler and cease long before a distal end of the attachment.

36. The FlexStyle™ design is in stark contrast to the embodiments of the '979 patent, wherein the outlets extend continuously along the attachment to the distal end. For example, as shown below in Figure 3a of the '979 patent, the outlets (labeled 100), extend all the way to the distal end (the component labeled 36):



FIG. 3a

37. The distinction above between the FlexStyle™ and claim 1 is one of the principal bases on which Dyson obtained its claims from the U.S. Patent and Trademark Office ("PTO"). After several rejections and amendments, including an appeal, Dyson finally agreed to an amendment that put the claims into allowable state required by the Examiner, by replacing the language "at least one slot extending continuously towards a distal end of the attachment" with "at least one slot extending continuously from the proximal first portion to a distal end of the

13

attachment." May 10, 2021 Notice of Allowability at 3. Thus, the FlexStyle™, which does not have any "slot" that extends continuously to a distal end of the attachment, does not infringe either literally or under the doctrine of equivalents.

38. As another example, SharkNinja's Shark FlexStyle™ Air Styling & Drying System also does not meet at least the element "wherein the outlet is at least partially defined by an external surface of a substantially contiguous wall of the attachment and is configured to direct fluid flow emitted from the outlet tangentially along and around the external surface of the substantially contiguous wall to form a circumferential fluid flow around the cylindrical second portion of the attachment that encourages hair to automatically wrap around the cylindrical second portion, wherein the external surface of the substantially contiguous wall is an outermost surface of the attachment along an entire length of the attachment from a beginning of the at least one slot to an end of the at least one slot" as recited in independent claim 1 of the '979 patent.

39. For example, the FlexStyle™ Auto-Wrap Curler accessory has openings that are defined by rectangular baffles. The openings are entirely defined by such baffles, which are internal to the device and do not constitute an "external surface," and no part of the openings are defined by any external surface of a substantially contiguous wall of the attachment. The separateness of the openings from the convex outer surface is made even more acute by the physical separation (in both the horizontal and vertical direction) between the openings and the convex outer surface of the curler. In particular, the curler includes a vertical sidewall that separates the openings from the convex outer surface of the curler, and the wall and outer surface are separated by an observable gap.

40. The FlexStyle™ design is in stark contrast to embodiments of the '979 patent, in which the outlet is formed in part by an external surface of a substantially contiguous wall of the

attachment, as shown for example in an annotated Figure 5b of the '979 patent submitted by Dyson to the PTO (shown below) (December 22, 2020 Appeal Brief at 4):



FIG. 5b

As shown above, the outlet through which fluid air (labelled 122) travels is defined in part by the "External Surface" of the attachment (labelled 112).

41. The distinction above between the FlexStyle™ and claim 1 is one of the principal bases on which Dyson obtained its claims from the PTO. To try to avoid prior art, Dyson repeatedly was forced to amend the claims to require that the external surface that at least partially defines the outlet is a "substantially contiguous wall" of the attachment, and that the "external surface of the substantially contiguous wall is an outermost surface of the attachment along an entire length of the attachment from a beginning of the at least one slot to an end of the at least one slot." Dec. 11, 2017 Amendment at 2-4; May 10, 2018 Amendment at 2-4; Feb. 18, 2020 Amendment at 2. As demonstrated above, the openings in the FlexStyle™ Auto-Wrap Curler accessory are defined by internal rectangular baffles that are not an external surface of a substantially contiguous wall of the attachment nor an outermost surface of the attachment, let alone one that extends along the entire length of the attachment. Thus, the FlexStyle™ does not infringe either literally or under the doctrine of equivalents.

42. As another example, SharkNinja's Shark FlexStyle™ Air Styling & Drying System does not meet at least the element "wherein the outlet in the cylindrical second portion of the attachment comprises at least one slot extending continuously from the proximal first portion to a distal end of the attachment" as recited in independent claim 17 of the '979 patent, for the same reasons as those set forth above for claim 1.

43. As another example, SharkNinja's Shark FlexStyle™ Air Styling & Drying System does not have at least "wherein the outlet is at least partially defined by an external surface of a substantially contiguous wall of the attachment and is configured to direct fluid flow emitted from the outlet tangentially along and around the external surface of the substantially contiguous wall to form a circumferential fluid flow around the cylindrical second portion of the attachment that encourages hair to automatically wrap around the cylindrical second portion, wherein the external surface of the substantially contiguous wall is an outermost surface of the attachment along an entire length of the attachment from a beginning of the at least one slot to an end of the at least one slot" as recited in independent claim 17 of the '979 patent, for the same reasons as those set forth above for claim 1.

44. SharkNinja is entitled to a declaration pursuant to 28 U.S.C. §§ 2201 and 2202 that SharkNinja and the SharkNinja Shark FlexStyle™ Air Styling & Drying System do not infringe any claim of the '979 patent, either literally or under the doctrine of equivalents.

## PRAYER FOR RELIEF

WHEREFORE, SharkNinja respectfully requests that this Court enter judgment in its favor as follows:

(a) Declaring that SharkNinja and SharkNinja's Shark FlexStyle™ Air Styling & Drying System have not infringed and do not infringe any claim of the '979 patent, either literally or under the doctrine of equivalents;

(b) Declaring this to be an exceptional case and awarding SharkNinja its costs, expenses, and disbursements in this action, including reasonable attorney fees, pursuant to 28 U.S.C. § 285; and

(c) Awarding SharkNinja such further and additional relief that this Court deems just and proper.

## JURY DEMAND

SharkNinja requests a trial by jury on all issues so triable.

Dated: June 6, 2023

| | |
|---|---|
| OF COUNSEL:<br>Brian A. Rosenthal (*pro hac vice* forthcoming)<br>Benjamin Hershkowitz (*pro hac vice* forthcoming)<br>Vivian Lu (*pro hac vice* forthcoming)<br>GIBSON, DUNN & CRUTCHER LLP<br>200 Park Avenue<br>New York, NY 10166<br>(212) 351-4000<br><br>Brian Buroker (*pro hac vice* forthcoming)<br>Wendy W. Cai (*pro hac vice* forthcoming)<br>GIBSON, DUNN & CRUTCHER LLP<br>1050 Connecticut Avenue, N.W.<br>Washington, DC 20036-5306<br>(202) 955-8500 | /s/ Joseph J. Mueller<br>Joseph J. Mueller<br>WILMER CUTLER PICKERING HALE AND DORR LLP<br>60 State Street<br>Boston, Massachusetts 02109<br>(617) 526-6000<br>joseph.mueller@wilmerhale.com<br><br>Todd C. Zubler (*pro hac vice* forthcoming)<br>WILMER CUTLER PICKERING HALE AND DORR LLP<br>2100 Pennsylvania Avenue NW<br>Washington, DC 20037<br>(202) 663-6000<br>todd.zubler@wilmerhale.com<br><br>Omar A. Khan (*pro hac vice* forthcoming)<br>Jeffrey A. Dennhardt (*pro hac vice* forthcoming) |

WILMER CUTLER PICKERING HALE AND
  DORR LLP
7 World Trade Center
250 Greenwich Street
New York, New York 10007
(212) 230-8800
omar.khan@wilmerhale.com
jeffrey.dennhardt@wilmerhale.com

*Attorneys for Plaintiffs*
*SharkNinja Operating LLC and*
*SharkNinja Sales Company*