UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| SHARKNINJA OPERATING LLC, SHARKNINJA SALES COMPANY, OMACHRON ALPHA INC., and OMACHRON INTELLECTUAL PROPERTY INC., | * * * * * | |
| Plaintiffs, | * * | Civil Action No. 23-cv-12372-ADB |
| v. | * * | |
| DYSON, INC. and DYSON TECHNOLOGY LIMITED, | * * | |
| Defendants. | | |

# **MEMORANDUM AND ORDER**

BURROUGHS, D.J.

SharkNinja Operating LLC and SharkNinja Sales Company together with Omachron Alpha Inc. ("Omachron Alpha") and Omachron Intellectual Property Inc. ("Omachron IP") (collectively, "SharkNinja") bring this action against Dyson, Inc. and Dyson Technology Limited (collectively, "Dyson").

SharkNinja's Second Amended Complaint ("SAC") alleges that Dyson directly, willfully and/or indirectly infringed and continues to infringe eight patents held by SharkNinja, which are generally directed to vacuum technology. [ECF No. 58].

Now before the Court is Dyson's motion to dismiss the SAC pursuant to Federal Rule of Civil Procedure 12(b)(6). [ECF No. 76]. For the reasons stated below, the motion to dismiss is DENIED.

I. **BACKGROUND**

The following well-pleaded facts are alleged in SharkNinja's complaint and are taken as true for the purpose of resolving Dyson's motion.  See Ruivo v. Wells Fargo Bank, N.A., 766 F.3d 87, 90 (1st Cir. 2014).

A. **Factual Background**

SharkNinja develops and sells products in the housewares industry, including vacuums. [ECF No. 58 ¶ 29].  Its products are sold by retailers as well as through direct marketing to consumers using infomercials and the Internet.  [Id. ¶ 30].

Around 2006, SharkNinja began working with Wayne Conrad, founder and chief scientist of Omachron, who holds many patents and patent applications, including for inventions related to vacuums.  [ECF No. 58 ¶¶ 38–39].  SharkNinja and the Omachron Companies focused on the "orientation and layout of vacuum components, such as a hand vacuum cleaner with the cyclone, pre-motor filter, and horizontally-oriented suction motor arranged linearly from forward to rearward; a hand vacuum cleaner with a horizontally-oriented cyclone in a forward/rearward direction and a front-openable door; and a removable post-motor filter assembly that is at the rear of a hand vacuum."  [Id. ¶ 39].

The SharkNinja and Omachron Companies' work also led to "vacuums with multiple operable configurations, including, for example, a vacuum usable as an upright vacuum cleaner, as an upright vacuum cleaner with a removable hose, as a hand-carriable pod vacuum cleaner, and as a canister-type vacuum cleaner with the pod removed but connected to the floor-cleaning head."  [ECF No. 58 ¶ 39].  These designs were "incorporated into multiple commercially-successful vacuums, including but not limited to vacuums marketed as Shark® Infinity, Rotator®, Lift-Away Navigator®, Stratos™, Rocket® Pro, and Ion™ vacuums."  [Id. ¶ 40].

The SAC concerns the following eight patents pertaining to vacuums all of which are entirely owned by Omachron IP (the "Asserted Patents"):

- U.S. Patent No. 8,607,407 (the "'407 Patent"), issued on December 17, 2013;
- U.S. Patent No. 9,301,666 (the "'666 Patent"), issued on April 5, 2016;
- U.S. Patent No. 10,080,472 (the "'472 Patent"), issued on September 25, 2018;
- U.S. Patent No. 10,117,550 (the "'550 Patent"), issued on November 6, 2018;
- U.S. Patent No. 10,327,607 (the "'607 Patent"), issued on June 25, 2019;
- U.S. Patent No. 10,478,030 (the "'030 Patent"), issued on November 19, 2019;
- U.S. Patent No. 10,568,477 (the "'477 Patent"), issued on February 25, 2020; and
- U.S. Patent No. 11,389,038 (the "'038 Patent"), issued on July 19, 2022.

[ECF No. 58 ¶¶ 62, 74, 85, 97, 109, 121, 133, 145].

For each Asserted Patent, Omachron IP granted an exclusive license to Omachron Alpha, including the right to grant sublicenses. [ECF No. 58 ¶¶ 62, 74, 85, 97, 109, 121, 133, 145]. Omachron Alpha subsequently granted SharkNinja Operating LLC an exclusive license. [Id.] Together, Omachron and SharkNinja hold all substantial rights to the Asserted Patents. [Id.]

In accordance with 35 U.S.C. § 287(a), "the '407 Patent appears on SharkNinja's patent marking website for the Vertex/Stratos Cordless Stick Vacuum and the UltraCyclone Cordless Handheld Vacuum (CH951)." [ECF No. 58 ¶ 72]. Regarding the seven other Asserted Patents, "neither SharkNinja nor Omachron currently are or have distributed, sold, offered for sale, or made products that embody the claims of the [Asserted] Patent." [Id. ¶¶ 83, 95, 107, 119, 131, 143, 155].

### B. Infringement Allegations

The SAC alleges that Dyson has issued up to nine product lines (the "Accused Products") that meet all the limitations of at least one claim of each Asserted Patent. [ECF No. 58 ¶¶ 65, 77, 88, 100, 112, 124, 136, 148]. In support thereof, charts that identify a representative Accused Product for each patent and include an element-by-element analysis comparing the representative product to the claim are attached to the SAC, as is Exhibit R which is a comparison chart that compares each representative product to the other Accused Products (the "Claim Charts"). [ECF No. 58-1–9].

The SAC further alleges that Dyson has knowledge of the Asserted Patents because it monitors the patents of its competitors to investigate and assess potential infringement of those patents. [ECF No. 58 ¶¶ 66, 78, 89, 101, 113, 125, 137, 149]. In addition, it asserts that Dyson had actual knowledge of the '407 Patent, [id. ¶ 67], the '666 Patent, [id. ¶ 76], the '472 Patent, [id. ¶ 90], the '550 Patent, [id. ¶ 102], the '607 Patent, [id. ¶ 114], the '030 Patent, [id. ¶ 126], the '477 Patent [id. ¶ 138], and the '038 Patent, [id. ¶ 150], because they were cited by an examiner during various patent prosecutions and/or Dyson cited them during the prosecution of various other patent applications.

The SAC concludes that despite having knowledge of the Asserted Patents, Dyson continues to make and sell the Accused Products on its website, provides services and parts for them, and offers user manuals for download. [ECF No. 58 ¶¶ 68–69, 79–80, 91–92, 103–04, 115–16, 127–28, 139–40, 151–52].

### C. Procedural History

SharkNinja filed its initial complaint against Dyson on June 6, 2023, requesting declaratory judgment of non-infringement of a SharkNinja patent relating to haircare (Count I).

[ECF No. 1]. Several days later, on June 9, 2023, Dyson answered and filed a counterclaim alleging infringement of its haircare patent. [ECF No. 6].

On August 15, 2023, Dyson filed an Amended Complaint [ECF No. 42] adding allegations of infringement of eight other SharkNinja patents relating to vacuums (Counts II–IX). On August 29, 2023, Dyson moved to sever the haircare claim and counterclaim from the vacuum claims. [ECF No. 48]. On September 19, 2023, SharkNinja filed a Second Amended Complaint. [ECF No. 58]. On October 10, 2023, Dyson moved to dismiss for failure to state a claim.[1] [ECF No. 76]. Three days later, on October 13, 2023, the Court granted Dyson's motion to sever and ordered that the claims proceed as separate, related actions. [ECF No. 83]. SharkNinja opposed the motion to dismiss on November 7, 2023, [ECF No. 93], and Dyson replied on November 21, 2023, [ECF No. 102].

## II.     LEGAL STANDARD

On a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), the Court must accept as true all well-pleaded facts, analyze those facts in the light most favorable to the plaintiff, and draw all reasonable inferences from those facts in favor of the plaintiff. U.S. ex rel. Hutcheson v. Blackstone Med., Inc., 647 F.3d 377, 383 (1st Cir. 2011). Aside from the complaint, "a court may consider matters of public record and facts susceptible to judicial notice." U.S. ex rel. Winkelman v. CVS Caremark Corp., 827 F.3d 201, 208 (1st Cir. 2016).

A complaint "must provide 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" Cardigan Mountain Sch. v. N.H. Ins. Co., 787 F.3d 82, 84 (1st Cir. 2015) (quoting Fed. R. Civ. P. 8(a)(2)). Although detailed factual allegations are not required, a

---

[1] Dyson initially moved to dismiss under Rule 12(b)(6) on August 29, 2023. [ECF No. 45]. After SharkNinja filed the SAC on September 19, 2023, Dyson filed a revised 12(b)(6) motion, which is the subject of this order, [ECF No. 76].

complaint must set forth "more than labels and conclusions," Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007), and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Rather, a complaint "must contain sufficient factual matter" that, if "accepted as true," would "state a claim to relief that is plausible on its face." Id. (quoting Twombly, 550 U.S. at 570).

When evaluating the sufficiency of a complaint, the Court "first must 'distinguish the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited).'" Cardigan Mountain Sch., 787 F.3d at 84 (further internal quotation marks and citation omitted) (quoting García-Catalán v. United States, 734 F.3d 100, 103 (1st Cir. 2013)). "Second, the court must determine whether the factual allegations are sufficient to support the reasonable inference that the defendant is liable for the misconduct alleged." García-Catalán, 734 F.3d at 103 (internal quotation marks and citation omitted). In conducting this analysis, in addition to accepting all well-pleaded facts as true, the Court must analyze those facts in the light most favorable to the plaintiff's theory, drawing all reasonable inferences in favor of the plaintiff. U.S. ex rel. Hutcheson, 647 F.3d at 383.

### III. DISCUSSION

#### A. Direct Infringement Allegations

Dyson contends that SharkNinja has failed to state a plausible claim for direct infringement because it has included unspecified products in its list of Accused Products and because its Claim Charts are conclusory. [ECF No. 77 at 7–11]

Section 271(a) of the Patent Act provides that "whoever without authority makes, uses, offers to sell, or sells any patented invention . . . during the term of the patent therefor, infringes the patent." 35 U.S.C. § 271(a); see also Siemens Med. Sols. USA, Inc. v. Saint-Gobain

Ceramics & Plastics, Inc., 637 F.3d 1269, 1290 (Fed. Cir. 2011). To succeed on a claim for direct infringement, the allegedly infringing product must practice all elements of a patent claim. Southwall Techs., Inc. v. Cardinal IG Co., 54 F.3d 1570, 1575 (Fed. Cir. 1995).

1. Unspecified Products (Counts II–IX)

Dyson argues that SharkNinja improperly alleged infringement of unspecified products in its Second Amended Complaint when it defined the "Accused Products" as "non-limiting examples" to be supplemented, as appropriate, with "additional infringing activities, products and services." [ECF No. 58 ¶¶ 63, 75, 86, 98, 110, 122, 134, 146].

SharkNinja responds that it does not allege infringement of unspecified products; rather, it "merely reserves the right to identify additional infringing products uncovered in discovery." [ECF No. 93 at 1].

Local Rule 16.6 requires that the patentee must make preliminary disclosures to the opposing party detailing its infringement claims and theories, including Claim Charts that identify "each accused product" and provide "an element-by-element description of where and how each element of each asserted claim is found in each accused product or method." Local Rule 16.6(d)(1)(A). Those infringement contentions can be "amended and supplemented only by leave of court upon a timely showing of good cause." Local Rule 16.6(d)(5). To determine whether good cause exists, the court considers the moving party's diligence and any prejudice to the non-moving party. See O2 Micro Int'l. Ltd. v. Monolithic Power Sys., Inc., 467 F.3d 1355, 1366 (Fed. Cir. 2006). "The burden is on the movant to establish diligence rather than on the opposing party to establish a lack of diligence." Id.

At this early stage, the SAC has identified at least nine allegedly infringing product lines and eight Asserted Patents. [ECF No. 58]. After making disclosures to Dyson pursuant to Rule

16.6(d)(1)(A), if SharkNinja, through discovery or through newly published information, identifies other products that relate back to its stated claims and theories, then it can move to amend and supplement its disclosures.  See Local Rule 16.6(d)(5).  It will, however, be SharkNinja's burden to establish that it was diligent in seeking an amendment.  Id.; see also Philips N. Am. LLC v. Fitbit LLC, No. 19-cv-11586, 2021 WL 5417103, at *3 (D. Mass. Nov. 19, 2021) (citing O2 Micro, 467 F.3d at 1366).

### 2. Uncharted Products (Counts II, V and VII–IX)

Dyson argues that SharkNinja's allegations regarding uncharted products should be dismissed because the SAC's statement that a Claim Chart for one allegedly infringing product is "representative" of other product lines is conclusory and insufficient to allege direct infringement.  [ECF No. 77 at 3–6].

SharkNinja responds that the representative Claim Charts in combination with Exhibit R, which compares the representative product to the other allegedly infringing product lines, is sufficient to put Dyson on notice of its claims, which is all that is required at this stage.  [ECF No. 93 at 4–6].

"A plaintiff is not required to plead infringement on an element-by-element basis." Bot M8 LLC v. Sony Corp. of Am., 4 F.4th 1342, 1352 (Fed. Cir. 2021) ("[T]he Federal Rules of Civil Procedure do not require a plaintiff to plead facts establishing that each element of an asserted claim is met." (citing Nalco Co. v. Chem-Mod, LLC, 883 F.3d 1337, 1350 (Fed. Cir. 2018))).  "Instead, it is enough 'that a complaint place the alleged infringer on notice of what activity is being accused of infringement.'"  Id. (quotations and alteration omitted) (quoting Lifetime Indus., Inc. v. Trim-Lok, Inc., 869 F.3d 1372, 1379 (Fed. Cir. 2017)).

There must, however, "be some factual allegations that, when taken as true, articulate why it is plausible that the accused product infringes the patent claim." Id. at 1353.[2]

Here, SharkNinja has adequately put Dyson on notice as to what it must defend. At this pleading stage, SharkNinja is not required to establish that each cited product infringes its patent. See K-Tech Telecomms., Inc. v. Time Warner Cable, Inc., 714 F.3d 1277, 1286 (Fed. Cir. 2013). Dyson asserts that the charts are no more than pictures devoid of "an element-by-element analysis of how the photographs depict infringement of all limitations of any Claim." [ECF No. 77 at 5 (quoting Raptor, LLC v. Odebrecht Constr., Inc., No. 17-cv-21509, 2017 WL 3503399, at *4 (S.D. Fla. June 22, 2017))]. SharkNinja, however, did not merely attach photographs of the allegedly infringing products to its complaint as was the case in Raptor. Rather, SharkNinja parsed the language of its representative claims and paired each element with photographs of corresponding elements in the Accused Products. See [ECF No. 58-9]. These representative charts together with Exhibit D contain sufficient "analysis" to allow Dyson to answer.

Accordingly, Dyson's motion to dismiss SharkNinja's SAC for direct infringement is DENIED.

---

[2] Dyson attempts to exempt the Humdinger product from SharkNinja's allegations by pointing to Exhibit R's failure to state that the Humdinger includes the second and fifth listed features. [ECF No. 77 at 6]. Footnote 1 of Exhibit C states, however, that "the evidence set forth in this [C]laim [C]hart relates to the Dyson V15 Detect™ line of vacuum cleaners." [ECF No. 58-1]. The remaining Dyson Accused Products all have identical structures and features in material respects, as set forth in the Comparison Chart at Exhibit R to the Second Amended Complaint. [ECF No. 58-9]. These Dyson Accused Products include, but are not limited to, the Dyson Cyclone V10™ line, Dyson V11™ line, Dyson Omni-glide™ line, Dyson Outsize™ line, Dyson V12™ line, Dyson V15 Detect™ line, Dyson V15s Detect Submarine™ line, Dyson Gen5 line, and Dyson Humdinger™." [ECF No. 58-1]. This is sufficient to include the Humdinger in SharkNinja's direct infringement claim.

### B. Willful Infringement

Next, Dyson contends that SharkNinja has failed to state a claim for willful infringement. [ECF No. 77 at 6]. Section 284 of the Patent Act allows courts in certain cases to increase infringement damages "up to three times the amount found or assessed." 35 U.S.C. § 284. Enhanced damages are generally "reserved for egregious cases typified by willful misconduct." Halo Elecs., Inc. v. Pulse Elecs., Inc., 579 U.S. 93, 106 (2016).

#### 1. Knowledge

"Knowledge of the patent alleged to be willfully infringed" is a "prerequisite to enhanced damages." WBIP, LLC v. Kohler Co., 829 F.3d 1317, 1341 (Fed. Cir. 2016) (citing Halo, 579 U.S. at 104).

SharkNinja alleges that Dyson's knowledge of its infringement can be inferred based on: (1) the competitive nature of the parties' industry; (2) Dyson's patent monitoring including those of its competitors such as Omachron and SharkNinja; and (3) Dyson's citations to the Asserted Patents during previous patent prosecution. [ECF No. 58 ¶¶ 66–67, 78, 89–90, 101–02, 13–14, 125–26, 137–38, 149–50].

Knowledge can be demonstrated by a totality of the circumstances analysis, WCM Indus., Inc. v. IPS Corp., 721 F. App'x 959, 970 (Fed. Cir. 2018), and it can be proven using circumstantial evidence, SiOnyx, LLC v. Hamamatsu Photonics K.K., 330 F. Supp. 3d 574, 608–10 (D. Mass. 2018).

Dyson cites to cases that have held that patent monitoring or prior prosecution, standing alone, is insufficient to support an inference of knowledge. [ECF No. 77 at 7–8]. See, e.g. Princeton Digital Image Corp. v. Ubisoft Ent. SA, No. 13-cv-00335, 2017 WL 6337188, at *1 (D. Del. Dec. 12, 2017) (holding that Defendants' citation to an unrelated patent that made

reference to the asserted patent was too tenuous a connection to infer that Defendants knew of the asserted patent); Core Optical Techs., LLC v. Nokia Corp., No. 19-cv-02190, 2020 WL 6126285, at *7 (C.D. Cal. Oct. 8, 2020) (holding that the allegation that Defendant directly or indirectly owned six patents against which the asserted patent was cited in prosecution was insufficient by itself to infer knowledge); DermaFocus LLC v. Ulthera, Inc., 201 F. Supp. 3d 465, 471 (D. Del. 2016) (finding that the allegation that Defendant cited the asserted patent in prosecution ten years previously was insufficient by itself to establish actual knowledge).

Here, however, SharkNinja has alleged that Dyson conducted patent monitoring and cited the asserted patents in previous patent prosecution in addition to describing their environment as close competitors.  [ECF No. 58 ¶¶ 66–67, 78, 89–90, 101–02, 113–14, 125–26, 137–38, 149–50].  Therefore, a more appropriate analysis would consider cases where courts have assessed the totality of the circumstances to determine pre-suit knowledge.

In Bio-Rad Laboratories, Inc. v. 10X Genomics, Inc., the court held that the complaint stated sufficient facts to infer pre-suit knowledge "given [the parties'] nature as competitors in a specialized market, previous patent litigation between [the parties (involving different patents)], and access to [the] patent portfolio."  No. 19-cv-12533, 2020 WL 2079422, at *5 (D. Mass. Apr. 30, 2020).  In Simplivity Corp. v. Springpath, Inc., the court held that pre-suit knowledge could be inferred from the fact that the parties were competitors, the ease of online patent research, defendant and its representative's surreptitious pre-suit investigation of plaintiff's technology at a trade show, and defendant's subsequent development of a product that mimicked the technology underlying the asserted patent.  See No. 15-cv-13345, 2016 WL 5388951, at *9 (D. Mass. July 15, 2016).

SharkNinja asserts similar circumstantial factors from which the court can infer Dyson's pre-suit knowledge. [ECF No. 58 ¶¶ 66–67, 78, 89–90, 101–02, 113–14, 125–26, 137–38, 149–50]. Specifically, SharkNinja contends that the fact that both companies operated in a closely competitive market together with the allegations that Dyson conducted patent monitoring and referenced SharkNinja's patents in prior patent prosecution are sufficient to survive a motion to dismiss. [Id.]

Alternatively, SharkNinja argues that these facts show willful blindness, which can also satisfy the knowledge requirement. [Id. 58 ¶¶ 68, 79, 91, 103, 115, 127, 139, 151]. Willful blindness has "two basic requirements":

> (1) the defendant must subjectively believe that there is a high probability that a fact exists and (2) the defendant must take deliberate actions to avoid learning of that fact. . . . Under this formulation, a willfully blind defendant is one who takes deliberate actions to avoid confirming a high probability of wrongdoing and who can almost be said to have actually known the critical facts.

Global-Tech Appliances v. SEB S.A., 563 U.S. 754, 769 (2011).

Because the court finds that SharkNinja has alleged sufficient facts to infer Dyson's pre-suit knowledge of the Asserted Patents, it need not reach the willful blindness question. See Ocado Innovation, Ltd. v. AutoStore AS, 561 F. Supp. 3d 36, 58 (D.N.H. 2021). It is notable, however, that SharkNinja's SAC is devoid of any allegation that Dyson took affirmative, deliberate actions to avoid learning of SharkNinja's patents or that Dyson subjectively believed that SharkNinja's asserted patents existed. [ECF No. 58]. If SharkNinja intends to rely on a willful blindness theory to show pre-suit knowledge, it will have to produce evidence of these facts or risk dismissal of this theory at a later stage in the case. See, e.g., In re Mass. Mut. Life Ins. Co.'s Motions to Strike, No. 11-cv-30035, 2012 WL 5077642, at *5 (D. Mass. Oct. 17, 2012).

Finally, SharkNinja claims that Dyson had post-suit knowledge of the Asserted Patents. [ECF No. 58 ¶¶ 64, 76, 87, 99, 111, 123, 135, 147]. It is well-established that the filing of a lawsuit is sufficient to support a claim for willful infringement for at least the alleged infringement that followed the filing of the suit. See, e.g., Zond, Inc. v. Fujitsu Semiconductor Ltd., 990 F. Supp. 2d 50, 58 (D. Mass. 2014); Bio-Rad, 2020 WL 2079422, at *4; Lexington Luminance LLC v. TCL Multimedia Tech. Holdings, Ltd., No. 16-cv-11458, 2017 WL 3795769, at *6 (D. Mass. Aug. 30, 2017).

### 2. Intent and Conduct

Knowledge of the patent is only one part of the knowledge required for culpable infringement—the accused infringer must also have known that its acts constituted infringement. See Halo, 579 U.S. at 111 (Breyer, J., concurring). Whether the conduct was "willful" is a question of intent that must be inferred from the totality of the circumstances by the factfinder. WCM Indus., 721 F. App'x at 970 (quoting Shiley, Inc. v. Bentley Lab'ys, Inc., 794 F.2d 1561, 1568 (Fed. Cir. 1986)).

Here, SharkNinja argues that Dyson's continued sale of the Accused Products, despite its pre-suit and post-suit knowledge of their infringement, is sufficient at the pleading stage to show that it acted with intention. [ECF No. 58 ¶¶ 63–64, 75–76, 86–87, 98–99, 110–11, 122–23, 134–35, 146–47].

In Bio-Rad, the court considered a similar fact pattern and found that the plaintiff had pleaded enough information to plausibly infer the defendant's pre-suit and post-suit knowledge of the patents and that the defendant willfully continued to sell its allegedly infringing materials. 2020 WL 2079422, at *6. See also Lexington Luminance, 2017 WL 3795769, at *6 ("At this

13

juncture, a plaintiff is not required to allege more than knowledge of the patent and of infringement.").

As in Bio-Rad and Lexington Luminance, SharkNinja has adequately pleaded that Dyson knew of the Asserted Patents and its infringement of them and continued to develop and sell the Accused Products. "Whether [plaintiff] can ultimately show that it is entitled to enhanced damages for Defendants' 'egregious infringement behavior' is not relevant to the Court's consideration of a motion to dismiss." Id. at *6 (quoting Halo, 579 U.S. at 103).

Accordingly, Dyson's motion to dismiss SharkNinja's SAC for willful infringement is DENIED.

### C. Indirect Infringement

A claim for indirect infringement can be based on inducement under 35 U.S.C. § 271(b) or contributory infringement under 35 U.S.C. § 271(c). In order for a defendant to be liable for either type of indirect infringement, a patentee must show that some party has directly infringed. See Limelight Networks, Inc. v. Akamai Techs., Inc., 572 U.S. 915, 917 (2014).

#### 1. Induced Infringement

Under § 271(b) of the Patent Act, "[w]hoever actively induces infringement of a patent shall be liable as an infringer." 35 U.S.C. § 271(b). A plaintiff alleging inducement must show that the defendant both (1) "knew of the patent" and (2) "knew as well 'that the induced acts constitute patent infringement.'" Commil USA, LLC v. Cisco Sys., Inc., 575 U.S. 632, 640 (2015) (quoting Global-Tech Appliances, 563 U.S. at 766); see also Lifetime Indus., 869 F.3d at 1379 (noting that for an induced infringement claim "to survive a motion to dismiss, a complaint must plead facts plausibly showing that the accused infringer 'specifically intended [another

14

party] to infringe [the patent] and knew that the [other party]'s acts constituted infringement.'") (alterations in original and citation omitted).

"To state a claim for indirect infringement . . . a plaintiff need not identify a specific direct infringer if it pleads facts sufficient to allow an inference that at least one direct infringer exists." In re Bill of Lading Transmission & Processing Sys. Pat. Litig., 681 F.3d 1323, 1336 (Fed. Cir. 2012); see also Sunrise Techs., Inc. v. Cimcon Lighting, Inc., 219 F. Supp. 3d 260, 264 (D. Mass. 2016) ("In its amended complaint, plaintiff avers that defendant markets its accused products by depicting a hypothetical customer using the products in a manner that infringes the . . . patent. Such allegations are sufficient to allow an inference that a direct infringer exists."); cf. Zond, 990 F. Supp. 2d at 57–58 (holding that although the complaint was largely conclusory, on a motion to dismiss it was sufficient to show that any of many possible yet unnamed purchasers of the infringing products were direct infringers).

Here, as previously discussed, SharkNinja has adequately pleaded that Dyson had knowledge of the Asserted Patents and intended to infringe them. SharkNinja has also pleaded that Dyson affirmatively induced its customers to infringe the Asserted Patents. [ECF No. 58 ¶¶ 68, 79, 91, 103, 115, 127, 139, 151]. "[I]nducement must involve the taking of affirmative steps to bring about the desired result." Global-Tech, 563 U.S. at 760. Evidence of affirmative steps can "be found in 'advertising an infringing use or instructing how to engage in an infringing use.'" Vanda Pharms. Inc. v. W.-Ward Pharms. Int'l, Ltd., 887 F.3d 1117, 1129 (Fed. Cir. 2018) (quoting Takeda Pharm. U.S.A. v. W.-Ward Pharm. Corp., 785 F.3d 625, 630–31 (Fed. Cir. 2015)). SharkNinja has alleged that Dyson advertises the Accused Products to customers, offers instructions for their use, and sells replacement parts, the purpose of which

15

could only be to induce customers to perform the claimed methods. [ECF No. 58 ¶¶ 68, 79, 91, 103, 115, 127, 139, 151]. That is adequate to survive a motion to dismiss.

2. Contributory Infringement

SharkNinja has also sufficiently pleaded contributory infringement. "To establish contributory infringement, the patent owner must show . . . (1) that there is direct infringement, (2) that the accused infringer had knowledge of the patent, (3) that the component has no substantial noninfringing uses, and (4) that the component is a material part of the invention." Fujitsu, Ltd. v. Netgear, Inc., 620 F.3d 1321, 1326 (Fed. Cir. 2010).

As discussed, SharkNinja has adequately alleged the first two elements. SharkNinja further alleges that the Accused Products have no substantial non-infringing use. [ECF No. 58 ¶¶ 69, 80, 92, 104, 116, 128, 140, 152]. Accepting the Claim Charts as true for the purposes of the Motion to Dismiss, the Accused Products cannot be used in a way that does not perform the claimed methods. See [ECF No. 58-9].

Finally, SharkNinja alleges that the Accused Components are material to the invention and "not a staple article or commodity of commerce suitable for a substantial non-infringing use." [ECF No. 58 ¶¶ 69, 80, 92, 104, 116, 128, 140, 152]; see also 35 U.S.C. § 271(c). The Accused Products are made up of Accused Components that are required for the Products to function. [ECF No. 58 ¶¶ 69, 80, 92, 104, 116, 128, 140, 152]. Moreover, they cannot be commoditized for any other purpose except as components for these Products. [Id.] Based on these allegations, SharkNinja has stated a claim of contributory infringement. [Id.]

Accordingly, Dyson's motion to dismiss SharkNinja's complaint for Indirect Infringement is DENIED.

### D. Compliance with the Marking Statute

"Pursuant to 35 U.S.C. § 287(a), [the 'Marking Statute'], a patentee who makes or sells a patented article must mark his articles or notify infringers of his patent in order to recover damages." Arctic Cat, Inc. v. Bombardier Rec. Prods. Inc., 876 F.3d 1350, 1365 (Fed. Cir. 2017). "If a patentee who makes, sells, offers for sale, or imports his patented articles has not 'given notice of his right' by marking his articles pursuant to the marking statute, he is not entitled to damages before the date of actual notice." Id. at 1366 (quoting Dunlap v. Schofield, 152 U.S. 244, 248 (1894)).

The SAC states that "[t]he '407 Patent appears on SharkNinja's patent marking website for the Vertex/Stratos Cordless Stick Vacuum and the UltraCyclone Cordless Handheld Vacuum (CH951)." [ECF No. 58 ¶ 72]. It further states that "neither SharkNinja nor Omachron currently are or have distributed, sold, offered for sale, or made products that embody the claims of" the other seven Asserted Patents. [Id. ¶¶ 83, 95, 107, 119, 131, 143, 155].

Dyson contends that SharkNinja has not complied with the Marking Statute for two reasons. First, in the case of the '407 Patent, SharkNinja pleaded that only two of its products are marked as practicing and did not plead that no other products practice the '407 Patent, nor did it indicate when it began marking its products so as to establish when it provided Dyson with constructive notice. [ECF No. 77 at 16–17]. Second, SharkNinja did not allege that SharkNinja is and always has been the exclusive licensee of the remaining seven Asserted Patents. [Id. at 17–18].

As an initial matter, Dyson's reliance on Blackbird Tech LLC v. Argento SC By Sicura, Inc., No. 21-cv-11018, 2022 WL 3701084, at *2 (S.D.N.Y. Aug. 26, 2022) is misplaced. [ECF No. 77 at 16–17]. In that case, the court held that the plaintiff's assertion that it complied with

17

Case 1:23-cv-12372-ADB   Document 164   Filed 07/30/24   Page 18 of 19

the Marking Statute was conclusory because "the FAC [did] not explain, for example, whether that compliance ha[d] occurred because the [asserted] Patent was never practiced, because patented articles were actually marked when entered into commerce, or because [the plaintiff had given the defendant] pre-suit notice." Blackbird, 2022 WL 3701084, at *2.

By contrast, here SharkNinja alleges that it complied with the Marking Statute regarding the '407 Patent because it identified the two products that it asserts practice the '407 Patent and alleges that the '407 Patent appears on its patent marking website, thus putting Dyson on constructive notice. [ECF No. 58 ¶ 72]. SharkNinja alleges that it is also in compliance regarding the other seven Asserted Patents because they were never practiced. [Id. ¶¶ 83, 95, 107, 119, 131, 143, 155].

Dyson presents a novel argument: that the Marking Statute obligates SharkNinja not only to mark and identify products that practice the '407 Patent, but also to plead the negative, i.e. that its other products do not practice the '407 Patent. The Court is not aware of any case law to support this position. Additionally, while the question of when the products were first marked may be relevant at a later stage, that information is not required to survive a motion to dismiss. See Arctic Cat, 876 F.3d at 1368; see also Gart v. Logitech, Inc., 254 F.3d 1334, 1339 (Fed. Cir. 2001).

Dyson's second argument, that SharkNinja has not pleaded compliance with respect to the seven other Asserted Patents, is similarly creative. The SAC states that for each Asserted Patent, "Omachron IP granted an exclusive license to . . . Omachron Alpha," and Omachron Alpha "granted SharkNinja Operating LLC an exclusive license to the [Asserted] Patent." [ECF No. 58 ¶¶ 74, 85, 97, 109, 121, 133, 145]. Drawing all inferences in favor of the nonmoving party, Dyson's suspicion that the Asserted Patents could have been practiced by unnamed parties

18

at some point when the license may not have been exclusive is not credible. If Dyson discovers evidence that the Asserted Patents were practiced and unmarked, Dyson will have the opportunity to make a showing to that effect (and the burden of doing so). Arctic Cat, 876 F.3d at 1368 ("[A]n alleged infringer who challenges the patentee's compliance with § 287 bears an initial burden of production to articulate the products it believes are unmarked 'patented articles' subject to § 287.").

Accordingly, Dyson's motion to dismiss pre-suit damages for failure to comply with the Marking Statute is DENIED.

## IV.  CONCLUSION

For the foregoing reasons, Dyson's motion to dismiss Counts II through IX of the Second Amended Complaint is DENIED.

**SO ORDERED.**

July 30, 2024                                                                 /s/ Allison D. Burroughs
                                                                              ALLISON D. BURROUGHS
                                                                              U.S. DISTRICT JUDGE