**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

|  |  |
|---|---|
| SHARKNINJA OPERATING LLC, SHARKNINJA SALES COMPANY OMACHRON ALPHA INC., and OMACHRON INTELLECTUAL PROPERTY INC., <br><br> *Plaintiffs,* <br><br> v. <br><br> DYSON, INC. and DYSON TECHNOLOGY LIMITED, <br><br> *Defendants*. | Case No. 1:23-cv-12372-ADB <br><br> JURY TRIAL DEMANDED |

**PARTIES' JOINT STATEMENT REGARDING PLAINTIFFS'**
**<u>DISCLOSURE OF HYPOTHETICAL CLAIMS</u>**

Plaintiffs and Counterclaim Defendants SharkNinja Operating LLC, SharkNinja Sales Company, Omachron Alpha Inc., and Omachron Intellectual Property Inc. (collectively, "SharkNinja-Omachron" or "Plaintiffs"), and Defendants and Counterclaim Plaintiffs Dyson, Inc. and Dyson Technology Limited (collectively, "Dyson" or "Defendants") (each a "Party" and, collectively, the "Parties"), by and through their undersigned counsel of record, hereby submit their respective proposals with respect to Plaintiffs' hypothetical claims requested by the Court, Dkt. 168.

I.      **PLAINTIFFS' PROPOSAL**

**HYPOTHETICAL CLAIM 1 SHOWN AS AMENDED FROM CLAIM 9 OF ASSERTED U.S. PATENT 10,478,030:**

A surface cleaning apparatus comprising:

(a)     a surface cleaning head having a front end, a rear end, a dirt air inlet and a cleaning head air outlet;

(b)     a rigid air flow conduit having a rigid wand inlet end having an air inlet in communicable with the cleaning head air outlet, a rigid wand outlet end and a longitudinally extending conduit axis, the rigid air flow conduit is moveably mountable to the surface cleaning head between an upright position and an in-use floor cleaning position in which the rigid air flow conduit extends at an angle to the vertical, the rigid wand outlet end having an air outlet and an outlet end electrical connector; and,

(c)     a hand vacuum cleaner removably mountable to the rigid wand outlet end, the hand vacuum cleaner having a front end and a rear end, the hand vacuum cleaner comprising:

     (i)      a main body comprising a handle and a suction motor and fan assembly, the suction motor and fan assembly having a suction motor axis of rotation, the handle having a hand grip portion;

     (ii)     an air treatment member provided at the front end of the hand vacuum cleaner, the air treatment member having a central longitudinal axis;

     (iii)    a hand vacuum cleaner air inlet provided on the front end of the air treatment member and releasably connectable with the air outlet of the rigid wand, the hand vacuum cleaner air inlet having an inlet axis that is ~~coaxial with the central longitudinal axis~~ not more than half an inch in distance from the central longitudinal axis and not more than 5° angled with the central longitudinal axis; and,

     (iv)    a hand vacuum cleaner electrical connector provided on the front end of the air treatment member adjacent the hand vacuum cleaner air inlet, the hand vacuum cleaner electrical connector is releasably connectable with the outlet end electrical connector,

wherein, when the hand vacuum cleaner is mounted to the rigid wand outlet end, the longitudinally extending conduit axis extends in a same direction as the central longitudinal axis of the air treatment member, and

wherein the hand grip portion has a hand grip portion axis that intersects the suction motor.

**HYPOTHETICAL CLAIM 2 SHOWN AS AMENDED FROM CLAIM 11 OF U.S. PATENT NO. 10,117,550:**

The surface cleaning apparatus of claim 9 wherein the hand vacuum cleaner inlet passage is ~~coaxial~~ not more than half an inch in distance from the central longitudinal axis and not more than 5° angled with the longitudinally extending conduit axis.

**HYPOTHETICAL CLAIM 3 SHOWN AS AMENDED FROM CLAIM 1 OF U.S. PATENT NO. 9,301,666[1]:**

A hand vacuum cleaner comprising an air treatment portion and a main body, the air treatment portion comprising a first cyclonic cleaning stage, a second cyclonic cleaning stage and a premotor filter, the hand vacuum cleaner comprising:

(a)    a fluid flow path extending from a dirty air inlet to a clean air outlet and the dirty fluid inlet defines a passage extending along a passage axis;

(b)    the first cyclonic cleaning stage is positioned in the fluid flow path and comprises a first cyclone having a dirt collection region wherein the dirt collection region has an openable bottom;

(c)    the second cyclonic cleaning stage is positioned in the fluid flow path downstream from the first cyclonic cleaning stage and comprises a central longitudinal axis, the second cyclonic cleaning stage comprising a plurality of cyclones ~~in parallel,~~ wherein two adjacent cyclones of the plurality of cyclones have cyclone axes angled at no more than 30°, and ~~that~~ are arranged around a central portion and, after exiting the second stage cyclones, air enters an upper portion of the central portion and exits the central portion at a position below the upper portion where the air enters the central portion;

(d)    the pre-motor filter is positioned in the fluid flow path downstream from the second cyclonic cleaning stage and comprises an upstream side and a downstream side wherein the central longitudinal axis extends through a volume occupied by the pre-motor filter; and,

(e)    the main body comprises a fluid flow motor housing for a fluid flow motor that is disposed in the fluid flow path downstream from the pre-motor filter, wherein the fluid flow motor has a rotational axis and a projection of the rotational axis intersects the central longitudinal axis and the fluid flow motor housing is secured to only a portion of a sidewall of the air treatment portion, wherein

(i)    the fluid flow motor and a handle of the hand vacuum cleaner are positioned rearward of the second cyclonic cleaning stage;

---

[1]    This hypothetical claim is only applicable if "in parallel" is construed by the Court to require physical parallel alignment.

    (ii)       the dirt collection region is positioned beneath and vertically aligned with the cyclones of the first and second cyclonic cleaning stages and the pre-motor filter; and,

    (iii)      the handle comprises an upwardly extending portion when the hand vacuum cleaner is positioned on a horizontal surface, the upwardly extending portion extends away from the fluid flow motor housing and the passage axis of the dirty fluid inlet intersects the upwardly extending portion of the handle.

## HYPOTHETICAL CLAIM 4, SHOWN AS AMENDED FROM CLAIM 1 OF U.S. PATENT NO. 10,327,607[2]:

A hand carriable surface cleaning apparatus comprising:

    (a)      a fluid flow path extending between a dirty air inlet and a clean air outlet;

    (b)      a first cyclonic cleaning stage positioned in the fluid flow path downstream from the dirty air inlet, the first cyclonic cleaning stage comprising an upper end, a bottom end spaced longitudinally below the upper end and a side wall extending therebetween, the first cyclonic cleaning stage having a dirt collection region with a bottom door that is openable to empty the dirt collection region;

    (c)      a second cyclonic cleaning stage positioned in the fluid flow path downstream from the first cyclonic cleaning stage, the second cyclonic cleaning stage having an upper end which is positioned above the upper end of the first cyclonic cleaning stage, the second cyclonic cleaning stage is longitudinally moveable relative to ~~all of the sidewall of~~ a cylindrical outer wall of the first cyclonic cleaning stage;

    (d)      a suction motor positioned in the fluid flow path downstream from the second cyclonic cleaning stage; and,

    (e)      a handle; wherein the second cyclonic cleaning stage comprises a plurality of second cyclones connected fluidly in parallel with each other, wherein the second cyclones are positioned around a central longitudinal axis that extends through the first cyclonic cleaning stage and the openable bottom door, and wherein the plurality of second cyclones includes a first set of second cyclones arranged in an inner ring and a second set of second cyclones arranged in an outer ring laterally surrounding the inner ring.

---

[2]    This hypothetical claim is only applicable if "moveable relative to all of the sidewall of the first cyclonic cleaning stage" is construed to mean "moveable relative to all of the first cyclonic cleaning stage."

A doctrine of equivalents theory can only be asserted if it does not "ensnare" the prior art. *DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*, 567 F.3d 1314, 1322 (Fed. Cir. 2009).  An "ensnarement" analysis, of which constructing hypothetical claims is a tool, is a complementary but separate inquiry from the factual inquiry of infringement under the doctrine of equivalents. *G. David Jang, M.D. v. Bos. Sci. Corp.*, 872 F.3d 1275, 1284–85 (Fed. Cir. 2017) ("In an appeal relating to the doctrine of equivalents, a party often challenges the fact finding made below of infringement (or no infringement) under that doctrine, which is usually analyzed under the well-established 'substantially the same function-way-result' or 'insubstantial differences' inquiry … Instead, this appeal centers on the district court's application of a limitation on the reach of the doctrine, known as 'ensnarement.'") (internal citations omitted).

"Hypothetical claim analysis is a two-step process. The first step is 'to construct a hypothetical claim that literally covers the accused device.' Next, prior art introduced by the accused infringer is assessed to 'determine whether the patentee has carried its burden of persuading the court that the hypothetical claim is patentable over the prior art.' In short, [the court] ask[s] if a hypothetical claim can be crafted, which contains both the literal claim scope and the accused device, without ensnaring the prior art." *Id.* at 1285 (quoting *Intendis GmbH v. Glenmark Pharm. Inc., USA*, 822 F.3d 1355, 1363 (Fed. Cir. 2016).

"Under a hypothetical claim analysis, a patentee proposes a hypothetical claim that is sufficiently broad in scope to literally encompass the accused product or process." *Ultra-Tex Surfaces, Inc. v. Hill Bros. Chem. Co.*, 204 F.3d 1360, 1364 (Fed. Cir. 2000). "The burden of producing evidence of prior art to challenge a hypothetical claim rests with an accused infringer, but the burden of proving patentability of the hypothetical claim rests with the patentee." *Interactive Pictures Corp. v. Infinite Pictures, Inc.*, 274 F.3d 1371, 1380 (Fed. Cir. 2001).

Dyson objects to Plaintiffs' proposed hypothetical claims without proposing a set of hypothetical claims that Dyson considers appropriate.[3]  Most of the cases cited by Dyson for its objections do not involve hypothetical claims at all.  And those that address hypothetical claims do not support Dyson's objections.  For example, in *Moore U.S.A., Inc. v. Standard Reg. Co.*, 229 F.3d 1091 (Fed. Cir. 2000), involved a party attempting to capture the "antithesis" of the actual claim language.  *Id.* at 1106 (rejecting the plaintiff's attempt to argue a "minority" is equivalent to a "majority").  And *G. David Jang, M.D. v. Bos. Sci. Corp.*, 872 F.3d 1275 (Fed. Cir. 2017) stands for the proposition that hypothetical claims must broaden the asserted claims.  *Id.* at 1287.  Plaintiffs' proposed hypothetical claims properly broaden the actual claim language to capture substantial equivalents.

Dyson first objects that Plaintiffs' proposed hypothetical claims seek to circumvent the Court's claim construction and are an attempt to redraft the claims to cover non-equivalent devices.  But the Court has not yet construed the claims, and Plaintiffs' proposed hypothetical claims properly capture substantially equivalent devices.  Similarly, Dyson objects to Plaintiffs' proposed hypothetical claims for allegedly "conflicting with claim language."  But the purpose of the hypothetical claim analysis is to construct a claim that is broader than the actual claims.  *Jang*, 872 F.3d at 1282.  Plaintiffs' proposed hypothetical claims properly do so.

---

[3] Dyson incorrectly states that Plaintiffs' proposal is "untimely" because Plaintiffs did not provide its "full set" of proposed hypothetical claims until "mere hours before the deadline to file this notice."  Plaintiffs provided proposed hypothetical claims on August 29, 2024, in accordance with the Court's order.  Dyson did not make itself available to meet and confer until September 4, and only fully articulated its objections in a multi-page substantive insert sent to Plaintiffs the afternoon of September 5 (the original filing deadline), despite Plaintiffs' multiple requests that Dyson do so sooner to give Plaintiffs time to consider.  Plaintiffs sent an amendment to one of the proposed hypothetical claims (hypothetical claim 3, above) to Dyson less than 24 hours after receiving Dyson's written objections, in accordance with the Court's direction that the parties confer on the hypothetical claims.  Plaintiffs' other hypothetical claims remain unchanged.

Dyson objects to Plaintiffs' proposed hypothetical claims as "add[ing] narrowing positional, geometric, and orientation limitations that are not present in the issued claims." But Plaintiffs' proposed hypothetical claims are strictly broader than the actual claims asserted, replacing the elements being analyzed under the doctrine of equivalents with language that is unambiguous and literally broader in scope. Also, all hypothetical claims necessarily include language not present in the issued claims—that is the point of the hypothetical claims. *Id.*

Dyson contends that Plaintiffs' proposed hypothetical claims ensnare the prior art. "The burden of producing evidence of prior art to challenge a hypothetical claim rests with an accused infringer." *Interactive Pictures*, 274 F.3d at 1380. Dyson has not carried its burden to produce evidence of prior art to challenge any of the proposed hypothetical claims.

Dyson also objects to Plaintiffs' proposed hypothetical claims as violating the doctrines of prosecution history estoppel, vitiation, and claim differentiation, and for not literally reading on Dyson's Accused Products. Plaintiffs disagree with each of Dyson's objections, and Plaintiffs will respond once Dyson has articulated the bases for these objections.

## II.   DYSON'S PROPOSAL

It is SO's burden to prove that it is entitled to the range of equivalents it seeks under the doctrine of equivalents, which starts with proposing proper hypothetical claims that only broaden the issued asserted claims. *G. David Jang, M.D. v. Bos. Sci. Corp.*, 872 F.3d 1275 (Fed. Cir. 2017). SO provided its full set of proposed hypothetical claims to Dyson mere hours before the deadline to file this notice, which deprived Dyson of a sufficient opportunity to assess SO's proposed claims and to respond. As identified below, SO's untimely proposal fails to provide proper hypothetical claims or show that SO is entitled to the expanded scope of the doctrine of equivalents.

Dyson objects to SO's hypothetical claims because they improperly seek to circumvent the Court's claim construction; they improperly conflict with the claim language; they improperly

narrow the claim; they violate the doctrines of prosecution history estoppel, ensnarement, vitiation, and claim differentiation; and because Dyson does not infringe SO's proposed hypothetical claims.

SO's hypothetical claims seek to circumvent the Court's claim construction. The doctrine of equivalents "is not designed to permit wholesale redrafting of a claim to cover non-equivalent devices, i.e., to permit a claim expansion that would encompass more than an insubstantial change," *Perkin-Elmer Corp. v. Westinghouse Elec. Corp.*, 822 F.2d 1528, 1532 (Fed. Cir. 1987), and a patentee cannot use the doctrine of equivalents to regain arguments excluded by claim construction, *Sci. Specialties Inc. v. Thermo Fisher Sci. Inc.*, 684 F. Supp. 2d 1187, 1196 (N.D. Cal. 2010). Yet, SO's hypothetical claims seek to re-inject SO's flawed claim construction positions back into the claims through the doctrine of equivalents.

SO's hypothetical claims conflict with the claim language. "The inherent narrowness of the claim language" at-issue "warrant[s] little, if any, range of equivalents." *Moore U.S.A., Inc. v. Standard Reg. Co.*, 229 F.3d 1091, 1106 (Fed. Cir. 2000). The doctrine of equivalents should not be used to eliminate a "distinct limitation, which was part of the bargain when the patent issued," nor should it be used to "allow recapture of subject matter excluded by a deliberate and foreseeable claim drafting decision." *Planet Bingo, LLC v. GameTech Int'l, Inc.*, 472 F.3d 1338, 1344 (Fed. Cir. 2006). Yet, SO's proposed hypothetical claims seek to apply the doctrine of equivalents to claim terms that are unambiguously narrow.

SO's hypothetical claims narrow the claim. "A patentee ... bears the burden of proving that it is entitled to the range of equivalents which it seeks. And, when utilizing the hypothetical claim tool, that burden starts with proposing a proper hypothetical claim that ***only broadens* the issued asserted claims**." *G. David Jang, M.D. v. Bos. Sci. Corp.*, 872 F.3d 1275, 1287 (Fed. Cir. 2017) (internal quotations and citations omitted). Yet, SO's proposed hypothetical claims add

narrowing positional, geometric, and orientation limitations that are not present in the issued claims. For example, in hypothetical claim number 3, which SO first disclosed to Dyson mere hours before the deadline to file this notice, SO proposes adding limitations about maximum cyclone angles, which are narrowing limitations not previously required by the claim.

SO's hypothetical claims violate the doctrine of prosecution history estoppel. "Prosecution history estoppel can prevent a patentee from relying on the doctrine of equivalents when the patentee relinquishes subject matter during the prosecution of the patent, either by amendment or argument." *AquaTex Indus., Inc. v. Techniche Solutions*, 419 F.3d 1374, 1382 (Fed. Cir. 2005). "When [] the patentee originally claimed the subject matter alleged to infringe but then narrowed the claim in response to a rejection, he may not argue that the surrendered territory comprised unforeseen subject matter that should be deemed equivalent to the literal claims of the issued patent." *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722, 733–34 (2002). "[T]he patentee [] bear[s] the burden of showing that the amendment does not surrender the particular equivalent in question." *Id.* at 725. To overcome examiner rejections during prosecution, the patentee added the claim limitations that SO now seeks to remove with its proposed hypothetical claims. Having narrowed the claims to overcome the prior art, SO's attempt to reclaim that "surrendered territory" is improper. *Festo*, 535 U.S. at 733–34.

SO's hypothetical claims violate the doctrine of ensnarement. "A patentee may not assert a scope of equivalency that would encompass, or ensnare, the prior art." *Intendis GMBH v. Glenmark Pharms. Inc., USA*, 822 F.3d 1355, 1363 (Fed. Cir. 2016). "[I]t is the patentee's burden to propose a properly drafted hypothetical claim and to prove that the claim is patentable over the prior art." *Agrofresh Inc. v. Essentiv LLC*, No. CV 16-662 (MN), 2020 WL 7024867, at *15 (D. Del. Nov. 30, 2020) (citing *Interactive Pictures Corp. v. Infinite Pictures, Inc.*, 274 F.3d 1371,

1380 (Fed. Cir. 2001)). SO's proposed hypothetical claims ensnare the prior art. SO criticizes Dyson for not "produc[ing] evidence of prior art to challenge any of the proposed hypothetical claims," but Dyson received SO's full set of proposed hypothetical claims mere hours before the filing deadline, and the parties agreed during a meet and confer that the purpose of this notice is not to fully brief the parties' positions on these issues but is instead intended to outline the parties' proposals.

SO's hypothetical claims violate the doctrine of vitiation. "[A]n element of an accused product or process is not, as a matter of law, equivalent to a limitation of the claimed invention if such a finding would entirely vitiate the limitation." *Freedman Seating Co. v. Am. Seating Co.*, 420 F.3d 1350, 1358 (Fed. Cir. 2005). SO's proposed hypothetical claims read claim limitations out of the claims, which is "the precise type of overextension of the doctrine of equivalents that the claim vitiation doctrine is intended to prevent." *Id.* at 1362.

SO's hypothetical claims violate the doctrine of claim differentiation. Under this doctrine, the Court must presume that the Applicant's choice of different terms used in different patent claims result in a difference in meaning and scope for each of the claims. *Helmsderfer v. Bobrick Washroom Equip., Inc.*, 527 F.3d 1379, 1382 (Fed. Cir. 2008). Yet, SO's hypothetical claims expand the at-issue claim limitations, eliminating any difference in meaning and scope with different terms used in different claims, ignoring the patentee's drafting decisions.

SO's hypothetical claims do not literally read on Dyson's Accused Products. Hypothetical claims must "literally cover[] the accused device." *Intendis GMBH v. Glenmark Pharms. Inc., USA*, 822 F.3d 1355, 1363 (Fed. Cir. 2016). SO's hypothetical claims do not literally cover the Dyson Accused Products, which do not infringe SO's proposed hypothetical claims.

DATED: September 6, 2024

By:    _/s/ Adam Janes_                    By:    _/s/ Brian A. Rosenthal_

Kristina R. Cary (BBO #688759)            Joseph J. Mueller
**KIRKLAND & ELLIS LLP**                  WILMER CUTLER PICKERING HALE AND DORR
200 Clarendon Street                        LLP
Boston, MA 02116                          60 State Street
Telephone: 617-385-7500                   Boston, Massachusetts 02109
Facsimile: 617-385-7501                   (617) 526-6000
kristina.cary@kirkland.com                joseph.mueller@wilmerhale.com

Bryan S. Hales, P.C.                       Todd C. Zubler (_pro hac vice_)
Jay Emerick                                WILMER CUTLER PICKERING HALE AND DORR
Adam Janes                                   LLP
Christian Huehns                           2100 Pennsylvania Avenue NW
**KIRKLAND & ELLIS LLP**                  Washington, DC 20037
333 West Wolf Point Plaza                  (202) 663-6000
Chicago, IL 60654                          todd.zubler@wilmerhale.com
Telephone: 312-862-2000
Facsimile: 312-862-2200                    Omar A. Khan (_pro hac vice_)
bryan.hales@kirkland.com                   Jeffrey A. Dennhardt (_pro hac vice_)
jay.emerick@kirkland.com                   WILMER CUTLER PICKERING HALE AND DORR
adam.janes@kirkland.com                      LLP
christian.huehns@kirkland.com              7 World Trade Center
                                           250 Greenwich Street
Caitlin Dean                               New York, New York 10007
Matt Hershkowitz                           (212) 230-8800
**KIRKLAND & ELLIS LLP**                  omar.khan@wilmerhale.com
601 Lexington Avenue                       jeffrey.dennhardt@wilmerhale.com
New York, NY 10022
Telephone:  212-446-4800                   OF COUNSEL:
Facsimile:  212-446-4900                   Brian A. Rosenthal (_pro hac vice_)
caitlin.dean@kirkland.com                  Benjamin Hershkowitz (_pro hac vice_)
matt.hershkowitz@kirkland.com              Vivian Lu (_pro hac vice_)
                                           GIBSON, DUNN & CRUTCHER LLP
_Attorneys for Defendants and_             200 Park Avenue
_Counterclaim Plaintiffs_                  New York, NY 10166
                                           (212) 351-4000

                                           Brian Buroker (_pro hac vice_)
                                           Wendy W. Cai (_pro hac vice_)
                                           A. David Brzozowski (_pro hac vice_)
                                           GIBSON, DUNN & CRUTCHER LLP

1050 CONNECTICUT AVENUE, N.W.
WASHINGTON, DC 20036-5306
(202) 955-8500

Robert Vincent (*pro hac vice*)
GIBSON, DUNN & CRUTCHER LLP
2001 ROSS AVENUE
DALLAS, TX 75201-2923
(214) 698-3100

*Attorneys for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 6, 2024, a true and correct copy of the foregoing was served upon all counsel of record via the Court's CM/ECF system.


*/s/ Brian A. Rosenthal*
Brian A. Rosenthal